**CITY OF AMARILLO et al., Appellants,**

v.

**GRIGGS SOUTHWEST MORTUARY, INC.,
and James Horace Griggs, Jr., Appellees.**

No. 7627.

Court of Civil Appeals of Texas.

Amarillo.

June 20, 1966.

Rehearing Denied Sept. 6, 1966.

Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, James H. Doores, Amarillo, of counsel, for appellants.

Lockhart & Wilds, Amarillo, for appellees.

CHAPMAN, Justice.

In June 1954 the City of Amarillo passed Ordinance No. 1991 regulating ambulance service upon the streets of the City, requiring (inter alia) permits, certificates of convenience and necessity, insurance and a performance bond, payment of a street rental charge, and prescribing conditions under which permits should be issued; providing for the regulation of rates, keeping of records and making reports thereon, duration and revocation of permits, and proper maintenance of equipment; defining the duties of the Director of Transportation; and providing that any person, firm or corporation violating any provision of the ordinance shall be guilty of a misdemeanor, and upon conviction shall be fined in any sum not to exceed $200, each day of a violation constituting a separate offense.

In January 1965 Griggs Southwest Mortuary, Inc., one of the appellees. herein, secured a permit from the Texas State Department of Health authorizing it to operate its ambulance to the twenty-first day of January, 1967. The permit was issued under authority of Senate Bill 230, Acts 48th Legislature, 1943, which is now Article 4590–b, Vernon's Ann.Texas Civ. St.

Without obtaining a permit from the City of Amarillo, appellee Griggs Southwest Mortuary, Inc. and James Horace Griggs, Jr. began operating an ambulance service for hire within the City. The ordinance was penal and was being enforced against appellees. Additionally, appellants, City of Amarillo, its police department and its hospital district were refusing to do business with appellees because of non-compliance with the subject ordinance.

Appellees sued in the 47th District Court to have the ordinance declared void and unconstitutional and also sought to enjoin its enforcement and discrimination against appellees for failure to have acquired a city permit to operate the ambulance service.

The trial court entered a declaratory judgment that the ordinance is invalid, unconstitutional and of no force and effect. The court also enjoined appellants from discriminating against appellees because of failure to comply with the ordinance, but refused to enjoin the penal enforcement. Thus, with the judgment of a court of record holding the ordinance invalid, unconstitutional and of no force and effect, it is axiomatic that the City was left in the decree without power of enforcement of the penal ordinance regardless of the court's exceptions recited therein. From such judgment appeal is perfected to our court upon numerous points of error, the first group of which attack the judgment enjoining appellants because of the court's lack of jurisdiction.

Amarillo is a home rule city, with the right to make its own charter so long as the provisions are not inconsistent with the Constitution or the general laws. Article 11, Section 5, Constitution of Texas, Vernon's Ann.St. To effectuate the provisions of that part of the Constitution just cited the legislature " * * * enumerated for greater certainty" numerous powers of local self-government of home rule cities under Article 1175 of Texas

Annotated Civil Statutes. Sections 20 and 21 thereof provide respectively as follows:

"20. To license, operate and control the operation of all character of vehicles using the public streets, including motorcycles, automobiles or like vehicles, and to prescribe the speed of the same, the qualification of the operator of the same, and the lighting of the same by night and to provide for the giving bond or other security for the operation of the same.

"21. To regulate, license and fix the charges or fares made by any person owning, operating or controlling any vehicle of any character used for the carrying of passengers for hire or the transportation of freight for hire on the public streets and alleys of the city."

Section 22 of Article 2 of the Charter of the City of Amarillo sets out specific regulations and enforcements under the division titled "Good Order, Safety and Health." Number (1) under *Traffic* provides for the regulation of all character of vehicles using the public streets of the City. Ordinance 1991 described in the first paragraph of this opinion regulates ambulance service.

■ A city such as Amarillo has a right to enact such an ordinance regulating vehicles. Town of Ascarate v. Villalobos, 148 Tex. 254, 223 S.W.2d 945; West v. City of Waco, 115 Tex. 472, 294 S.W. 832.

■ The fact that the state requires a license does not mean that the legislature has pre-empted the field. Ex Parte Heine, 158 Tex.Cr.R. 248, 254 S.W.2d 790; Town of Ascarate v. Villalobos, supra.

■ It is a well-established general rule in this state that equity will not enjoin enforcement of a criminal law,[1] the exceptions to such general law being when the penal statute or ordinance " * * * is un-

constitutional, or otherwise void, and enforcement thereunder involves an invasion of property rights which will result in an irreparable injury thereto. * * * " State v. Logue, supra; Ex Parte Sterling, supra; Crouch v. Craik, Tex., 369 S.W.2d 311.

"If either one of the requirements of equitable relief in this type of situation— void law and irreparable injury to property rights—is lacking, the courts of equity have *no jurisdiction to entertain such suit.*" State v. Logue, supra.

■ The Uniform Declaratory Judgments Act of 1943, Article 2524–1, V.T.C.S., did not change the rules respecting jurisdiction of courts of equity to construe penal statutes or ordinances, courts having been given in such act power to enter declaratory judgments only within their respective jurisdictions.

In Stecher v. City of Houston, Tex.Civ. App., 272 S.W.2d 925 (N.R.E.) Stecher sought injunction against the City of Houston and prosecution agencies to enjoin enforcement of a penal traffic ordinance and a declaratory judgment, just as in our case. That ordinance made it unlawful to park any vehicle other than a commercial vehicle in any truck loading zone between certain hours. Stecher operated a stationery service and used an automobile to deliver supplies in the City. The defendants excepted to the petition for lack of jurisdiction in the trial court on the ground that such relief could be granted only upon a showing of a vested property right, neither alleged nor shown. The trial court dismissed for want of jurisdiction and the intermediate appellate court affirmed, citing Kemp Hotel Operating Co. v. City of Wichita Falls, 141 Tex. 90, 170 S.W.2d 217 (Comm.App. opinion adopted); State ex rel. Flowers v. Woodruff, 150 Tex.Cr.R. 255, 200 S.W.2d 178; Liegl v. City of San Antonio, Tex.Civ.App., 207 S.W.2d 441 (N.R.E.) and others. In its opinion the appellate court quoted the trial court's Con-

1. State v. Logue, Tex., 376 S.W.2d 567; Ex Parte Sterling, 122 Tex. 108, 53 S.W.2d 294.

clusion of Law No. 1 to the effect that the suit was essentially to restrain the police department and the City of Houston from enforcing a penal ordinance and that the character thereof was not changed by calling it a suit for declaratory judgment; that such judgment could not be enforced except by injunction; and Stecher not having any vested property rights in the use of the streets in the manner claimed by him, the court was without jurisdiction to entertain the cause of action. The appellate court then affirmed, saying:

"In the light of the well settled rule that courts will not perform useless and vain acts, the logic of the quoted conclusion is manifest. Aside however from that consideration, the following should be noted. The Uniform Declaratory Judgments Act, being Article 2524–1, Sections 1 to 16 inclusive, Vernon's Ann.Civ. St., was passed in 1943 by the 48th Legislature. At that time, it was well settled, as shown by the authorities heretofore cited, that jurisdiction to determine the validity of penal statutes and ordinances where irreparable injury to vested property rights is not involved, is vested exclusively in the criminal courts. As those authorities indicate, such rule evolved from the construction placed by the courts on Article V, Section 5, Constitution of Texas. * * *"

██ We hold the trial court lacked jurisdiction. In the first place appellees had an adequate remedy at law by testing the constitutionality of the ordinance through the method of asserting such defense in a criminal prosecution thereunder. State v. Logue, supra; Liegl v. City of San Antonio, supra; State ex rel. Flowers v. Woodruff, supra; City of Graham v. Seal, Tex.Civ.App., 235 S.W. 668, 670 (writ dism.); Kemp Hotel Operating Co. v. City of Wichita Falls, supra.

██ .The Supreme Court of Texas in State v. Logue, supra, said: "If there is an adequate remedy at law by setting up the defense of unconstitutionality of the statute in question in a criminal proceeding, then the trial court had no jurisdiction to enjoin such criminal proceedings * * *" However, the requirement of property rights being affected is related to this adequacy of remedy at law. State v. Logue, supra. Wherein can it be said then that appellees have property rights to be protected? The property rights to be protected could only be the rights to do business as an ambulance service for hire on the streets of Amarillo. The cases are legion which hold that no person has a vested right to use such streets or state highways in carrying on a commercial business. Ex Parte Sterling, supra; Liegl v. City of San Antonio, supra; Mooney v. City of San Antonio, Tex. Civ.App., 386 S.W.2d 638 (writ ref.); Greene v. City of San Antonio, Tex.Civ. App., 178 S.W. 6 (writ ref.); State v. Logue, supra. In the last cited case the Supreme Court quoted with approval from Ex Parte Sterling, supra, where that court held:

" 'The complainants in the proceeding in which the injunctions were issued are not making, in common with the general public, the ordinary use of the highways, but an extraordinary one for the purpose of carrying on a business for profit. That they have no vested right to so use such highways is beyond question. Public highways and streets are constructed and maintained at the public expense. No person, therefore, can insist that he has, or may acquire, a vested right to use such streets and highways in carrying on a commercial business. * * *"

In Greene v. City of San Antonio, supra, Chief Justice Fly speaking for the San Antonio Court of Civil Appeals held:

"The highways of a state, including the streets in cities and towns, are under the paramount and primary control of the Legislature, and all powers of cities and towns over streets must depend upon the authority granted in special charters or

general laws applying to such municipalities. Whatever power the state has over its highways can be granted by it to the municipalities it has created, * * *

*   *   *   *   *   *

"No individual has the inherent right to use a street or highway for business purposes. No man has the right to use a street for the prosecution of his private business, and his use for that purpose may be prohibited or regulated as the state or municipality may deem best for the public good.

*   *   *   *   *   *

"The streets belong to the public, the city being its trustee, and no private individual or corporation has a right to use such streets for the prosecution of a business without the consent of the trustee and a compliance with the conditions upon which the permission to so use them is given * * * *"

■ Appellees contend there is an inherent conflict between Article 4590b and Ordinance No. 1991 in that the State of Texas issued the appellee mortuary a permit to operate an ambulance on the highways and streets. Minimum equipment and first aid knowledge by operators is required by the statute, so appellees contend this precludes cities from requiring permits. The same contention was made by Dallas Taxicab Co. v. City of Dallas, Tex.Civ. App., 68 S.W.2d 359 (N.W.H.) and in Town of Ascarate v. Villalobos, supra, and was rejected both by the Dallas Court of Civil Appeals and the Supreme Court of Texas. The latter court in the Villalobos case said:

"One holding a Certificate of Convenience and Necessity from the Railroad Commission to operate a motor bus line over a highway of this State is not thereby conferred with rights paramount or superior to the authority of a city, through which the highway runs, to regulate the traffic on its streets for the protection of the public."

■ Since the last sentence of Paragraph 1, Section 4 of Article 4590b provides authorization for cities to regulate sirens, warning signals, warning lights and illuminating and sound devices on ambulances appellees contend that no regulation other than authorized therein could be required by cities and towns. It has been textually stated that the rule does not apply " * * * where express authority given home rule cities is not inconsistent with, but merely goes beyond, general provisions authorizing the same thing to be done by all cities and towns." 53 T.J.2d, Statutes, Sec. 142, p. 208.

We believe the case law of Texas is contrary to the application of the rule in a situation such as we have here. Cameron v. City of Waco, Tex.Civ.App., 8 S.W.2d 249 is analogous. The authority given home rule cities under Article 1175, V.T. C.S. is not inconsistent with but merely more extensive and comprehensive than Article 4590b. The latter article covers the entire class by saying "all incorporated cities and towns" while "individual subjects of the same class," home rule cities, are covered by Article 1175. We believe it imperative that the City of Amarillo have the authority represented in its Ordinance No. 1991 and that the court below sitting as a court of equity was without jurisdiction to pass on the questions it decided.

It is not difficult to envision the danger and confusion in a city the size of Amarillo if all five mortuaries maintained ambulances and raced over the city to collisions and to other situations promising fees for ambulance service.

It is also important that the city be able to require applicants for ambulance operating privileges be physically fit, able and willing to perform, and be financially responsible, insured, and bonded. The Supreme Court of Texas in Parsons v. City of Galveston, 125 Tex. 568, 84 S.W.2d 996 has said:

"Every regulation that has a tendency to increase the responsibility of persons

using public streets exclusively for private gain in carrying on a private business, to that extent protects the public against traffic dangers and promotes the general welfare."

The statute was penal, so we do not believe the trial court could create jurisdiction for itself by stating the exceptions in its judgment heretofore mentioned.

The judgment of the trial court is reversed and rendered.

## ON MOTION FOR REHEARING

We are challenged in appellee's motion for rehearing in speculating on the danger and confusion involved if five mortuaries operated ambulances, as the record reflects there are only two ambulance services in Amarillo.

It is true the record so reflects, but it shows at least five competing mortuaries. Plaintiffs' Exhibit No. 2 shows that Amarillo Ambulance Service, the only one in the city operating with a permit, has stated: "If the city will stop the Southwest Ambulance operation, we will continue in business. If it will not, this company must cease operations and try to pay all of its debts."

Under the record here we believe it is reasonable to assume that if the city is not permitted to regulate ambulances the other mortuaries will be forced to initiate ambulance services to protect their mortuary interests. If they should all do so, the confusion in a city the size of Amarillo and the danger to both pedestrian and vehicular traffic would be intolerable.

The Amarillo Ambulance Service manager testified if Southwest Mortuary ceased to operate its ambulance service, it would be placed under the same rotation system as the mortuaries named.

The motion for rehearing is overruled.